THIRD DIVISION
 October 23, 1996






No. 1-95-3204


THE PEOPLE OF THE STATE OF ILLINOIS, ) APPEAL FROM THE
 ) CIRCUIT COURT OF
 Plaintiff-Appellant, ) COOK COUNTY. 
 ) 
 ) 
v. ) 
 )
DEMOND PARKER, ) HONORABLE
 ) RALPH REYNA,
 Defendant-Appellee. ) JUDGE PRESIDING.


 JUSTICE GALLAGHER delivered the opinion of the court:
 Defendant, Demond Parker, was charged with unlawful use of a
weapon. After a hearing, the trial court granted defendant's
motion to quash arrest and suppress evidence of the gun. The State
appeals arguing that no search occurred when the gun was
discovered. We affirm.
 Chicago Police Officer Daren Washington is part of a unit
which conducts random metal detector operations inside Chicago area
high schools. The mission of the six police officers and one
sergeant unit is to prevent students from entering schools with
weapons. 
 On April 12, 1995, Officer Washington was inside Bogan High
School where two metal detectors were set up. There were signs
posted at the school which stated that any person on the premises
was subject to a search. Around 7:20 a.m. defendant, a 16-year-
old, entered the school. Defendant looked in the direction where
the students were lined up to go through the metal detectors and
turned around to leave the school. At that time, Officer
Washington stopped the defendant and identified himself as a police
officer. He then told the defendant he would have to go through
the metal detector. To which defendant responded by raising his
shirt and saying "someone put this gun on me." After defendant
raised his shirt, Officer Washington could see the handle of a blue
steel semiautomatic pistol. Officer Washington then retrieved the
weapon and arrested the defendant.
 After a hearing, the trial court granted defendant's motion to
quash arrest and suppress evidence. The trial court found that the
defendant could have turned around for any number of innocent
reasons unrelated to the metal detectors.
 On appeal, the State argues that there was no search because
defendant did not go through the metal detector and was not patted
down. The State argues that because defendant raised his shirt,
the gun was in plain view, there was no search, and thus there
could not have been an illegal search. Defendant argues that the
stop was illegal. The stop led to the discovery of the gun. Thus,
the discovery of the gun was fatally tainted by the
unconstitutional stop. 
 "Hostility to seizures based on mere suspicion was a prime
motivation for the adoption of the Fourth Amendment." Dunaway v.
New York, 442 U.S. 200, 219, 60 L. Ed. 2d 824, 840, 99 S. Ct. 2248,
2257 (1979). A person is seized within the meaning of the fourth
amendment when, by a show of authority or use of physical force,
his freedom of movement is restrained. United States v. Mendenhall,
446 U.S. 544, 553, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877
(1980). A seizure occurs "whenever a police officer accosts an
individual and restrains his freedom to walk away." Terry v. Ohio,
392 U.S. 1, 16, 20 L. Ed. 2d 889, 903, 88 S. Ct. 1868, 1877 (1968);
see also Mendenhall, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S.
Ct. at 1877; People v. Long, 99 Ill. 2d 219, 229, 457 N.E.2d 1252
(1983).
 If, however, the person who police officers are talking to
remains free to disregard the questions and walk away, there is no
intrusion upon that person's liberty or privacy such that the
constitution would require some particularized and objective
justification. Mendenhall, 446 U.S. at 554, 64 L. Ed. 2d at 509,
100 S. Ct. at 1877. 
 In this case, we conclude that defendant's detention
constituted an illegal seizure. Defendant, a 16-year-old, was
specifically told by a police officer that he had to walk through
the metal detectors even though defendant was leaving the building. 
The only reason the officer had for stopping defendant was because
defendant entered the building, looked in the general area of the
metal detectors and turned around to leave. Nothing in the record
suggests that defendant was free to walk away if he had wanted to. 
Indeed, the officer's testimony suggests that defendant would have
been physically restrained if he had refused to go through the
metal detector. The detention to which defendant was subjected was
a more serious intrusion on his personal liberty than is allowable
on mere suspicion of criminal activity. See Florida v. Royer, 460
U.S. 491, 502, 75 L. Ed. 2d 229, 239, 103 S. Ct. 1319, 1326-27
(1983). 
 The State argues that the officers were performing an
administrative search supported by a legitimate government interest
and thus, the seizure was constitutional. The Supreme Court has
upheld suspicionless, administrative searches which were conducted
as part of a general regulatory scheme to ensure public safety, not
as a criminal investigation to secure evidence of crime. See 
Vernonia School District 47J v. Acton, _ U.S. _, 132 L. Ed. 2d 564,
115 S. Ct. 2386 (1995) (drug testing of student athletes); United
States v. Martinez-Fuerte, 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S.
Ct. 30 (1976) (automobile checkpoints looking for illegal
immigrants and contraband); Michigan Department of State Police v.
Sitz, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481 (1990)
(checkpoints to snare drunk drivers).
 Exceptions to the requirement of individualized suspicion can
be appropriate "where the privacy interests implicated by a search
are minimal and 'other safeguards' are available to assure that the
individual's reasonable expectation of privacy is not 'subject to
the discretion of the official in the field.'" New Jersey v.
T.L.O., 469 U.S. 325, 342, n. 8, 83 L. Ed. 2d 720, 735, n. 8, 105
S. Ct. 733, 742, 743, n. 8 (1985). 
 We note that the administrative search cases decided by the
Supreme Court did not prohibit a person from choosing not to go
through a checkpoint, i.e., from turning around on the road (see 
Martinez-Fuerte, 428 U.S. 543, 49 L. Ed. 2d 1116, 96 S. Ct. 30; 
Sitz, 496 U.S. 444, 110 L. Ed. 2d 412, 110 S. Ct. 2481), or from
opting to not participate in the school's athletic program and
thus, not take the drug test (Vernonia, _ U.S. _, 132 L. Ed. 2d
564, 115 S. Ct. 2386). 
 In the present case, defendant did not go through the metal
detectors, he did not even stand in line to go through the metal
detectors. Once he stepped inside the school, defendant, for
whatever reason, decided he was not going to stay in the building. 
While exercising his right to go another way, defendant was stopped
by an officer in front of all the other students. Defendant was
not merely questioned as to what was going on but rather ordered to
go through the metal detector. We find that the officer used his
discretion in stopping the defendant and ordering him to go through
the metal detector. At that point, defendant was unconstitutionally
seized. 
 The State further argues that defendant, as a public school
student, has a diminished expectation of privacy and that seizing
defendant was reasonable. The Supreme Court has held that the
legality of a search of a student depends on the reasonableness
under the circumstances. T.L.O., 469 U.S. at 341, 83 L. Ed. 2d at
734, 105 S. Ct. at 742. To determine reasonableness, the courts
look to: first, whether the action was justified at its inception;
second, whether the search was reasonably related in scope to the
circumstances which justified the interference in the first place.
T.L.O., 469 U.S. at 341-42, 83 L. Ed. 2d at 734-35, 105 S. Ct. at
742-43. A reasonable suspicion is the "sort of common sense
conclusion about human behavior upon which practical people--
including government officials--are entitled to rely, rather than
an inchoate and unparticularized suspicion or hunch." T.L.O., 469
U.S. at 346, 83 L. Ed. 2d at 737, 105 S. Ct. at 745. 
 The question, then, is whether Officer Washington had a
reasonable suspicion that justified the order to defendant to go
through the metal detector. As T.L.O. teaches, the action must be
"justified at its inception." There must be "reasonable grounds
for suspecting that the search will turn up evidence that the
student has violated or is violating either the law or the rules of
the school." T.L.O., 469 U.S. at 341-42, 83 L. Ed. 2d at 734-35, 
105 S. Ct. at 743. 
 In People v. Pruitt, 278 Ill. App. 3d 194, 210, 662 N.E.2d
540, 550 (1996), the dean of students told defendant Brooks to
empty his pockets to "further see just who he was and what, because
the actual suspicion was that he had something on him that was
suspicious--by his movements." The court in Pruitt found that the
dean did not have a reasonable suspicion to tell defendant Brooks
to empty his pockets. Pruitt, 278 Ill. App. 3d at 211, 662 N.E.2d
at 550. All the dean had was "an inchoate and unparticularized
suspicion or hunch." Pruitt, 278 Ill. App. 3d at 211, 662 N.E.2d
at 550.
 Similarly, in the present case, all the officer had was an
inchoate and unparticularized suspicion or hunch. We agree with
the trial court which stated that: "the defendant could have, even
-- if there were no signs, if there was no metal detector, he could
have just turned around and gone home for any number of reasons,
being sick, forgot something, forgot his lunch, forgot his books,
forgot his homework or what have you."
 There remains the question whether the connection between the
illegal detention and defendant's admission and showing of the gun
was sufficiently attenuated to permit use of that evidence. 
Evidence obtained as a result of an illegal detention must be
suppressed absent significant intervening circumstances that purged
the taint of the illegal detention. Dunaway, 442 U.S. at 219, 60
L. Ed. 2d at 840, 99 S. Ct. at 2260. To determine whether evidence
was obtained by exploiting the illegality, the courts must focus on
the causal connection between the illegality and the confession. 
Dunaway, 442 U.S. at 217, 60 L. Ed. 2d at 839, 99 S. Ct. at 2259. 
Factors to consider are the temporal proximity of the arrest and
the confession, the presence of intervening circumstances, and the
purpose and flagrancy of the official misconduct. Brown v.
Illinois, 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct.
2254, 2261-62 (1975). Statements given during an illegal detention
are inadmissible even though given voluntarily if they are the
product of the illegal detention. Royer, 460 U.S. at 501, 75 L.
Ed. 2d at 238, 103 S. Ct. at 1326.
 We conclude that the State has failed to sustain its burden of
showing that the evidence was admissible. See Brown, 422 U.S. at
604, 45 L. Ed. 2d at 427-28, 95 S. Ct. at 2262. In the case at
bar, there was no intervening event between the defendant being
illegally detained and the defendant admitting he had a gun and
showing it to the officer. Furthermore, the officer detained the
defendant purely as an investigatory expedition "in the hope that
something might turn up." See Brown, 422 U.S. at 605, 45 L. Ed. 2d
at 428, 95 S. Ct. at 2262. Clearly, evidence of the gun must be
suppressed.
 Accordingly, the trial court's granting of defendant's motion
to quash arrest and suppress evidence is affirmed.
 AFFIRMED.
 CERDA and GREIMAN, JJ., concur.